1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

# EASTERN DISTRICT OF WASHINGTON

7  TODD ALLEN COONEY,                     | No. 1:15-cv-03218-MKD

8              Plaintiff,                 | ORDER DENYING PLAINTIFF'S
                                          | MOTION FOR SUMMARY
9      vs.                                | JUDGMENT AND GRANTING
                                          | DEFENDANT'S MOTION FOR
10  COMMISSIONER OF SOCIAL                | SUMMARY JUDGMENT
    SECURITY,
11              Defendant.                | ECF Nos. 15, 16

12

13        BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 15, 16.  The parties consented to proceed before a magistrate

15  judge.  ECF No. 7.  The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed.  For the reasons discussed below, the Court

17  denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No.

18  16).

19                            **JURISDICTION**

20        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

1              **STANDARD OF REVIEW**

2        A district court's review of a final decision of the Commissioner of Social

3   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4   limited; the Commissioner's decision will be disturbed "only if it is not supported

5   by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

6   1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

7   reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

8   (quotation and citation omitted).  Stated differently, substantial evidence equates to

9   "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

10  citation omitted).  In determining whether the standard has been satisfied, a

11  reviewing court must consider the entire record as a whole rather than searching

12  for supporting evidence in isolation.  *Id.*

13       In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner.  If the evidence in the record "is

15  susceptible to more than one rational interpretation, [the court] must uphold the

16  ALJ's findings if they are supported by inferences reasonably drawn from the

17  record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

18  court "may not reverse an ALJ's decision on account of an error that is harmless."

19  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

20  nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

1    party appealing the ALJ's decision generally bears the burden of establishing that

2    it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

3    **FIVE-STEP EVALUATION PROCESS**

4        A claimant must satisfy two conditions to be considered "disabled" within

5    the meaning of the Social Security Act.  First, the claimant must be "unable to

6    engage in any substantial gainful activity by reason of any medically determinable

7    physical or mental impairment which can be expected to result in death or which

8    has lasted or can be expected to last for a continuous period of not less than twelve

9    months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

10   impairment must be "of such severity that he is not only unable to do his previous

11   work[,] but cannot, considering his age, education, and work experience, engage in

12   any other kind of substantial gainful work which exists in the national economy."

13   42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

14        The Commissioner has established a five-step sequential analysis to

15   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

16   404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

17   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

18   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

19   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20   404.1520(b); 416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

4    claimant suffers from "any impairment or combination of impairments which

5    significantly limits [his or her] physical or mental ability to do basic work

6    activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

7    416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

8    however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

9    §§ 404.1520(c); 416.920(c).

10    At step three, the Commissioner compares the claimant's impairment to

11    severe impairments recognized by the Commissioner to be so severe as to preclude

12    a person from engaging in substantial gainful activity.  20 C.F.R. §§

13    404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

14    severe than one of the enumerated impairments, the Commissioner must find the

15    claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

16    If the severity of the claimant's impairment does not meet or exceed the

17    severity of the enumerated impairments, the Commissioner must pause to assess

18    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

19    defined generally as the claimant's ability to perform physical and mental work

20    activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on August 9, 2012, alleging a disability onset date of May 1, 2011.[1]  Tr. 184-96.  He later amended the onset date to May 13, 2012.  Tr. 30-31.  The applications were denied initially and upon reconsideration.  Tr. 71-84, 87-104.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on March 28, 2014.  Tr. 27-68.  On May 28, 2014, the ALJ denied Plaintiff's claim.  Tr. 9-26.

_____

[1] The ALJ identified the date of both applications as July 9, 2012.  Tr. 12.  This clerical error does not affect the Court's analysis.

At the outset, the ALJ determined that Plaintiff's date last insured was December 31, 2016.[2] Tr. 14. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 21, 2012. Tr. 14. At step two, the ALJ found Plaintiff has the following severe impairments: chronic liver disease/cirrhosis and gastrointestinal (GI) hemorrhage. Tr. 14. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 15. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following nonexertional limitations:

> He can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk about 4 hours in an 8-hour workday, and sit without restriction in an 8-hour workday. He is limited to occasional stooping, kneeling, crouching, and climbing ramps, stairs, and ladders. He must avoid all exposure to climbing ropes or scaffolds, working at heights, and operating heavy equipment.

Tr. 16. At step four, the ALJ found that Plaintiff is not capable of performing past relevant work. Tr. 20. The ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform

---

[2] In order to obtain disability benefits, Plaintiff must demonstrate that he was disabled prior to his last insured date. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520.

given his age, education, work experience, and residual functional capacity, such as assembler, escort vehicle driver, and document preparer.  Tr. 21.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 22.

On October 30, 2015, the Appeals Council denied review, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI and disability insurance benefits under Title II of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly discounted Plaintiff's symptom claims; and

3. Whether the ALJ properly determined at step five that there were specific jobs available in significant numbers that Plaintiff could perform given his assessed limitations.

ECF No. 15 at 4.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the medical opinion of treating physician David Lindgren, M.D.  ECF No. 15 at 6-9.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.*  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).

Dr. Lindgren treated Plaintiff from July 2012 through 2013. *See* Tr. 331-41,

404-05, 434-46. On April 23, 2013, Dr. Lindgren opined that Plaintiff would need

to lie down three to four times a day for thirty minutes at a time and that Plaintiff

would miss four or more days of work a month due to his medical condition.

Tr. 19 (citing Tr. 404-05). Dr. Lindgren further opined that full-time work would

cause Plaintiff's condition to deteriorate because he would be "unable to rest[.]"

Tr. 19 (citing Tr. 405). The ALJ gave Dr. Lindgren's opinion "little to no

weight[.]" Tr. 19.

Because Dr. Lindgren's opinion was contradicted by Dr. Rubio, Tr. 87-104,

the ALJ need only offer specific and legitimate reasons to discount it. *Bayliss*, 427

F.3d at 1216.[3]

---

[3] Citing no legal authority, Plaintiff argues that because the ALJ did not specify

which opinion controverted Dr. Lindgren's opinion, that it was therefore

1    First, the ALJ rejected Dr. Lindgren's opinion because it was not supported

2  by his examination findings in the treatment record.  Tr. 20.  A medical opinion

3  may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is

4  inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart,* 278 F.3d

5  947, 957 (9th Cir. 2002).  Moreover, a physician's opinion may be rejected if it is

6  unsupported by the physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d

7  871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as

8  unsupported by physician's treatment notes).  Here, the ALJ noted that while Dr.

9  Lindgren's notes documented Plaintiff's complaints of fatigue and malaise, the

10  records did not indicate that these conditions were debilitating.  Tr. 20 (citing Tr.

11  443).  Dr. Lindgren's treatment notes reflect Plaintiff's self-reported symptoms of

12  "significant lethargy and fatigue and generalized malaise[]" only once during their

13  treating relationship.  Tr. 443.  However, this is inconsistent with Dr. Lindgren's

14  _____

15  uncontroverted.  ECF No. 15 at 7.  However, social security regulations do not

16  require ALJs to recite specific words in reviewing a doctor's opinion, and there is

17  no requirement for the ALJ to specify which opinion controverted Dr. Lindgren's.

18  *See Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that it is

19  proper for the court to make inferences from an ALJ's discussion of a medical or

20  psychological report, if the inferences are there to be drawn.).

assessment of Plaintiff's condition throughout treatment.  During the same

examination that Plaintiff reported that he was lethargic and fatigued, Dr. Lindgren

noted his general appearance as "alert and oriented, no acute distress, pleasant."

Tr. 443.  He consistently made similar observations throughout the course of

treatment.  Tr. 333 ("negative for, chills, fatigue" on July 11, 2012); Tr. 340 (On

September 18, 2012, "general appearance: Alert and oriented. Patient appears well,

cooperative and in no acute distress."); Tr. 437 (April 1, 2013 "no acute distress,

pleasant.").

        The ALJ found that there was no support in the record that Plaintiff must lie

down or elevate his legs during the day.  Tr. 20.  Dr. Lindgren opined that Plaintiff

would be restricted from working in part because he needed to lie down three to

four times per day for thirty minutes or more per episode.  Tr. 404-05.  However,

the only support for this assertion in the treatment record is Plaintiff's report that

he lies down throughout the day.  Tr. 443.  No other evidence or observations in

Dr. Lindgren's treatment notes supports Plaintiff's assertion.  *See* Tr. 331-41, 434-

46.  There are no tests, clinical findings, or other objective evidence to support this

assertion or limitation.  *See* Tr. 331-41, 434-46.  As will be discussed *infra*, the

ALJ properly discredited Plaintiff's symptom testimony, casting doubt on his

assertions that he must lay down throughout the day.  The ALJ determined that

1   Plaintiff's testimony is insufficient medical evidence to support Dr. Lindgren's

2   opined limitation.

3          Next, the ALJ concluded that "Dr. Lindgren's treatment reports fail to reveal

4   the type of significant clinical and laboratory abnormalities one would expect if the

5   claimant were in fact disabled[.]"  Tr. 20 (internal quotation marks omitted).  For

6   example, the nature of Plaintiff's appointments with Dr. Lindgren do not indicate

7   serious illness.  On July 11, 2012, Plaintiff met with Dr. Lindgren to establish care,

8   Tr. 331-34, on September 18, 2012, his appointment was for a medication review.

9   Tr. 339-40.  On April 1, 2013, he appeared for a physical.  Tr. 434-35.  That same

10  month, he was treated for swollen feet.  Tr. 441-44.  Also in April 2013, Plaintiff

11  had an appointment with Dr. Lindgren to have a wart and skin tags removed.  Tr.

12  445-46.  During each of these appointments, Dr. Lindgren conducted an

13  examination and noted Plaintiff's symptoms.  *See* Tr. 331-41, 434-46.  No

14  significant symptoms were reported.  *Id.*  On several occasions, Dr. Lindgren

15  ordered and reviewed lab work, these results were also within normal range.  Tr.

16  332-33, 442.  Other than a note that Plaintiff should take an over-the-counter

17  magnesium supplement for his mild anemia, Dr. Lindgren did not note anything of

18  concern in Plaintiff's bloodwork.  Tr. 442.

19         The ALJ next found that Dr. Lindgren's opinion was not supported by his

20  treatment notes because Dr. Lindgren advised Plaintiff to increase his physical

activity, which the ALJ found to be contrary to his ultimate opinion concerning

Plaintiff's disability status.  Tr. 20 (citing Tr. 443).  Dr. Lindgren recommended

that Plaintiff "increas[e] his physical activity if possible."  Tr. 443.  This indicates

a belief that Plaintiff could tolerate some physical exertion throughout the day.

Overall, the ALJ's conclusion that Dr. Lindgren's relatively mild examination

findings do not support his ultimate disability recommendation is well supported in

the record and is a specific and legitimate reason to discount his opinion.  *Bayliss*,

427 F.3d at 1216.

Second, the ALJ rejected Dr. Lindgren's opinion because it was not

consistent with medical evidence in the record.  Tr. 20.  An ALJ may discredit

treating physicians' opinions that are unsupported by the record as a whole or by

objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1195 (9th Cir. 2004).  Specifically, the ALJ considered the medical records from

Dr. Williams, an associate of Dr. Lindgren's.  Tr. 20.  Dr. Williams treated

Plaintiff a number of times throughout the medical record, but did not assess any

work restrictions or limitations.  Tr. 20 (citing Tr. 406-33).  He did not provide an

opinion of Plaintiff's inability to work.  *Id.*  Dr. Williams did note that Plaintiff

was "doing quite well" once he was abstinent from alcohol.  Tr. 407.  Dr. Williams

reviewed the results of Plaintiff's medical tests, including an upper endoscopy, and

noted "healing of gastric ulcers, mild portal gastrophy and trace esophageal

varices." Tr. 406. These results were benign and indicative of healing. Dr.

Williams took regular note of Plaintiff's reported symptoms. Often, Plaintiff

reported no issues, including no nausea, abdominal pain, or diarrhea. *See* Tr. 406,

407, 409, 411, 413, 415, 425. Intermittently, Dr. Williams noted "occasional

nausea" and a "diarrhea side effect" resulting from medication. Tr. 408, 414, 420.

The medical records produced by Dr. Williams do not support Dr. Lindgren's

opinion that Plaintiff was not able to work because they tend to indicate healing

and mild symptoms. Discord with the medical record as a whole is a specific and

legitimate reason to dismiss Dr. Lindgren's opinion. *Bayliss*, 427 F.3d at 1216.

Third, the ALJ discounted Dr. Lindgren's opinion because it was based on

Plaintiff's self-reported symptom testimony, which the ALJ properly found not to

be credible. Tr. 20. A physician's opinion may be rejected if it is based on a

claimant's subjective complaints which were properly discounted. *Tonapetyan v.

Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The only reference in Dr. Lindgren's

examination notes which relate to the opined limitations are references to

Plaintiff's self-reported symptom claims. Tr. 443. Dr. Lindgren appears to credit

those claims. *Id.* He noted "patient is constantly nauseous and has very frequent

diarrhea stools from the lactulose. He needs to lie down 3-4 times or more daily

and (sic) about half an hour at a time. He states that he only fill (sic) "good" for

about one hour during the day." Tr. 443.  These symptoms mirror Dr. Lindgren's

opinion that Plaintiff would be restricted from work because he would need to lie

down throughout the day, however, they are based on Plaintiff's self-reported

complaints.  They are not evident anywhere in Dr. Lindgren's notes except on the

day that Plaintiff asked Dr. Lindgren to fill out disability paperwork.  Tr. 443.  Dr.

Lindgren's reliance on Plaintiff's discounted symptom testimony is a specific and

legitimate reason to discount Dr. Lindgren's opinion.  *Bayliss*, 427 F.3d at 1216.

**B.  Adverse Credibility Finding**

Next, Plaintiff faults the ALJ for failing to provide specific findings with

clear and convincing reasons for discrediting his symptom claims.  ECF No. 15 at

9-13.

An ALJ engages in a two-step analysis to determine whether a Plaintiff's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom."  *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [he] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5    citations and quotations omitted). "General findings are insufficient; rather, the

6    ALJ must identify what testimony is not credible and what evidence undermines

7    the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d

8    at 958 ("[T]he ALJ must make a credibility determination with findings

9    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

10   discredit claimant's testimony."). "The clear and convincing [evidence] standard

11   is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

12   F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

13   F.3d 920, 924 (9th Cir. 2002)).

14       In making an adverse credibility determination, the ALJ may consider, *inter*

15   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16   claimant's testimony or between his testimony and his conduct; (3) the claimant's

17   daily living activities; (4) the claimant's work record; and (5) testimony from

18   physicians or third parties concerning the nature, severity, and effect of the

19   claimant's condition. *Thomas*, 278 F.3d at 958-59.

20

1    This Court finds the ALJ provided specific, clear, and convincing reasons

2    for finding that Plaintiff's statements concerning the intensity, persistence, and

3    limiting effects of his symptoms were "not entirely credible."  Tr. 17.

4        *1.  Objective Medical Evidence*

5        First, the ALJ found that "objective medical evidence does not substantiate

6    the claimant's statements."  Tr. 17.  An ALJ may not discredit a claimant's pain

7    testimony and deny benefits solely because the degree of pain alleged is not

8    supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857

9    (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v.*

10   *Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a

11   relevant factor in determining the severity of a claimant's pain and its disabling

12   effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

13       Additionally, the ALJ found that Plaintiff's relatively modest treatment

14   record was inconsistent with the level of disability he alleged.  Tr. 18.  The ALJ is

15   permitted to consider the claimant's lack of treatment in making a credibility

16   determination.  *Burch*, 400 F.3d at 681.  The ALJ reviewed in detail Plaintiff's

17   medical record.  *See* Tr. 17-18.  He acknowledged that Plaintiff had treatment

18   consistent with cirrhosis, including a number of esophagogastroduodenoscopies,

19   but that the "medical evidence of record failed to reveal the type of significant

20   clinical and laboratory abnormalities one would expect if the claimant were in fact

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 18

disabled [.]" Tr. 18.  As discussed regarding Dr. Lindgren *supra,* Plaintiff

presented regularly with benign results.  For example, he appeared to establish

treatment, manage his medication, undergo routine endoscopies, have skin tags

removed, and to treat swelling. Tr. 331-341, 434-446. But, he did not appear for

major maladies, suggesting that he was not suffering any incident to his diagnoses.

Next, the ALJ considered the objective medical evidence indicating that

Plaintiff's condition improved with treatment.  As discussed *supra,* "no focal

hepatic parenchymal abnormality was detected[]" during an examination.  Tr. 338.

Furthermore, test results "showed healing of gastric ulcers, mild portal gastropathy,

and trace esophageal varices." Tr. 18.  Improved indicators of cirrhosis tend to

suggest improved symptoms associated with those maladies.  Objective medical

evidence that tends to indicate Plaintiff was not as severely disabled as he alleged

is a specific, clear and convincing reason to reject Plaintiff's symptom testimony.

*Ghanim*, 763 F.3d at 1163.

### 2.  *Impairments Controlled with Treatment*

The ALJ found that Plaintiff's symptoms were effectively controlled with

treatment.  Tr. 18.  An impairment that can be effectively controlled with treatment

is not disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

Cir. 2006).  Plaintiff was diagnosed with cirrhosis of the liver and end-stage liver

disease, however, these conditions and their resulting side-effects were treated with

1   medication.  Tr. 17-18.  The ALJ noted that Plaintiff told Dr. Lindgren that he was

2   "tolerating his medications well" and did not report any adverse side effects from

3   the medications.  Tr. 18 (citing Tr. 340).  Plaintiff reported that he suffered nausea

4   and diarrhea as a side effect of his medication, and that the ALJ failed to take these

5   symptoms into account.  ECF No. 15 at 11.  However, Plaintiff's medical record

6   does not support that Plaintiff's side effects from medication were sufficiently

7   limiting to require a different RFC.  During several examinations, Plaintiff reported

8   to his doctors that he did not suffer from any nausea or diarrhea.  Tr. 406 ("He

9   denies nausea or vomiting. He has no abdominal pain. Bowel movements are

10  normal."); Tr. 407 ("no nausea or vomiting, bowel movements normal."); Tr. 409

11  ("No rectal bleeding, nausea, vomiting, constipation, diarrhea.").  Plaintiff

12  complained to Dr. Williams about nausea and diarrhea resulting from medication,

13  but reported that it was only "occasional nausea[.]"  Tr. 420.  On January 18, 2013,

14  Dr. Williams reduced Plaintiff's prescribed dose of Lactulose to one teaspoon daily

15  from two tablespoons twice a day due to the reported diarrhea side effect.  Tr. 421.

16  Plaintiff's medical record does not reflect any reports of diarrhea as a side effect of

17  medication after that date.  Plaintiff's medical record, therefore, tends to indicate

18  that nausea and diarrhea as a side effect of medication were not limiting

19  impairments.

20

1   Furthermore, the ALJ noted that Plaintiff's symptoms improved once he

2   stopped drinking alcohol.  Tr. 18.  Plaintiff reported intermittent abstinence from

3   alcohol, and improvement when he abstained.  Tr. 17-18.[4]  For example, during an

4   abdominal ultrasound in November 2012, Plaintiff "had findings consistent with

5   cirrhosis but no focal hepatic parenchymal abnormality was detected."  Tr. 338.  In

6   January 2013, test results "showed healing of gastric ulcers, mild portal

7   gastropathy, and trace esophageal varices."  Tr. 18 (citing Tr. 406).  This medical

8   evidence tends to indicate that abstinence and medication improved Plaintiff's

9   condition.  Improvement with treatment is a specific, clear and convincing reason

10  to reject Plaintiff's symptom testimony.  *Ghanim*, 763 F.3d at 1163.

11      *3.  Evidence of Daily Activities*

12      The ALJ found that Plaintiff's "daily activities were not limited to the extent

13  one would expect, given his complaints of disabling symptoms and limitations."

14  Tr. 19.  It is reasonable for an ALJ to consider a claimant's activities which

15  undermine claims of totally disabling pain in making the credibility determination.

16  _____

17  [4] Plaintiff's medical record does note symptoms of withdrawal (such as chest pain)

18  following abstention.  Tr. 17 (citing Tr. 369-76).  However, Plaintiff does not

19  allege these symptoms to be a disabling condition, as they did not last more than

20  twelve months.  No further consideration will be given to them here.

*See Rollins*, 261 F.3d at 857.  Notwithstanding, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  However, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.

Here, Plaintiff is able to care for himself, including preparing meals, doing laundry, and cleaning his apartment.  Tr. 19 (citing Tr. 239-40).  Plaintiff is able to groom himself, though with some support, such as holding on to the wall while showering or sitting while getting dressed.  Tr. 19 (citing Tr. 239).  He goes outside twice a day.  Tr. 241.  He is able to go grocery shopping independently.  Tr. 19 (citing Tr. 241).  Plaintiff spends social time with his girlfriend every day, social groups four times per week, and with his friends over the phone or internet every day.  Tr. 19 (citing Tr. 242).  This amount of daily functioning is not consistent with the Plaintiff's allegations that he cannot work throughout the day.  His daily activities evidence that Plaintiff can regularly leave the house, travel on his own, maintain social functioning, and stand and move throughout the day.  This undercuts his symptom testimony that his fatigue and nausea keep him from working throughout the day.  ECF No. 15 at 2.  Even if the evidence of Plaintiff's

1  daily activities may be interpreted more favorably to the Plaintiff, it is susceptible

2  to more than one rational interpretation, and therefore the ALJ's conclusion must

3  be upheld.  *See Burch*, 400 F.3d at 679.  Thus, Plaintiff's daily activities were

4  reasonably considered by the ALJ as inconsistent with his complaints of disabling

5  symptoms and limitations.  Moreover, even assuming, arguendo, that the ALJ erred

6  in this reasoning, any error would be harmless because the ALJ gave additional

7  reasons, supported by substantial evidence, for the credibility determination.  *See*

8  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

9  As long as there is substantial evidence supporting the ALJ's decision and the error

10  does not affect the ultimate nondisability determination, the error is harmless.  *Id.*

11  at 1162; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

12       *4.  Reason for Stopping Work*

13       The ALJ discounted Plaintiff's symptom testimony because "there is

14  evidence that he stopped working for reasons not related to the allegedly disabling

15  impairments."  Tr. 19.  An ALJ may consider that a claimant stopped working for

16  reasons unrelated to the allegedly disabling condition in making a credibility

17  determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008);

18  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  Here, Plaintiff admitted

19  that he stopped working in 2011 because he was terminated from employment

20  related to a driving under the influence charge.  Tr. 19 (citing Tr. 217).  Plaintiff's

1   allegedly disabling condition relates to alcohol consumption, however, his

2   disabling condition was not the cause of his work stoppage.  *Id.*  Stopping work for

3   a reason other than one's disabling impairment is a specific, clear and convincing

4   reason for the ALJ to discount the Plaintiff's symptom testimony.  *Ghanim*, 763

5   F.3d at 1163.

6       **C.  Step Five Determination**

7           Here, Plaintiff provides no support for his assertion that the ALJ did not

8   conduct a proper step five evaluation other than the previously addressed allegation

9   that the ALJ improperly weighed the medical evidence.  ECF No. 15 at 13-14.

10  Having previously found that the ALJ properly discounted Dr. Lindgren's opinion,

11  this Court does not find error at step five.

12                          **CONCLUSION**

13          After review, the Court finds that the ALJ's decision is supported by

14  substantial evidence and free of harmful legal error.

15

16

17

18

19

20

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

THE FILE.

DATED this 27th day of February, 2017.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE